Gene Billy WEST, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–88–00084–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 22, 1989.

Rehearing Denied Feb. 1, 1990.

**4** 

Charles D. Butts, San Antonio, for appellant.

Ronald L. Sutton, Dist. Atty., Junction, for appellee.

Before CADENA, C.J., and REEVES and PEEPLES, JJ.

## OPINION

REEVES, Justice.

Appellant was indicted for illegally manufacturing a controlled substance—phenylacetone—in excess of 400 grams. The jury found him guilty and assessed a prison term of ninety-nine (99) years at the Texas Department of Corrections. We affirm.

██ Appellant first argues that the trial court committed reversible error by allowing the State to introduce evidence of the appellant's prior tenure as a grand dragon of the Ku Klux Klan. Although not mentioned by either party, the record reveals a motion in limine had been granted. At trial, appellant testified in his own behalf and generally presented himself as aiding and assisting law enforcement efforts against drug-related crimes. On cross-examination, the following ensued:

*QUESTIONS BY MR. SUTTON:*

Q. Mr. West, we were discussing your reputation in San Antonio, in the Bexar County area, and we have been for the last two days, the reputation you have in the war on drugs. That's not the only reputation you have in San Antonio, is it, sir?

A. That I was on drugs, sir?

Q. No, that—your war on drugs, your reputation that you have tried to expound for this Jury through your testimony and that of the witnesses of your reputation for being a shining knight in armor and war on drugs, but that's not your only reputation, is it, sir? By the media and the public. Isn't it a fact, Mr. West, that your reputation—that you are so well entitled to and justly due, is that in the 1970s you were the Grand Dragon in the Ku Klux Klan of Texas?

MR. REECE: Objection, Your Honor.

THE COURT: I'll overrule the objection.

Although this type of impeachment testimony is patently inadmissible pursuant to TEX.R.CRIM.EVID. 608, the general objection of defense counsel does not adequately apprise the trial court of its impermissibility. TEX.R.APP.P. 52(a). Error in the admission of testimony will not be preserved by the filing of a motion in limine. *Soto v. State,* 736 S.W.2d 823, 827 (Tex.App.—San Antonio 1987, pet. ref'd). Objection must be made on proper grounds at the time the evidence is offered. *Id.* A general objection does not preserve error. *See McCarley v. State,* 763 S.W.2d 630, 632 (Tex.App.—San Antonio 1989, no pet.). By making only a general objection, appellant has waived any error. TEX.R.APP.P. 52(a). The point of error is overruled.

██ The second point of error states the trial court committed reversible error by overruling appellant's motion for a mistrial based upon unsworn testimony and comments by the District Attorney that appellant was, in effect, a "rip-off artist." Appellant directs us to two instances where the prosecutor used the phrase. On the first occasion, appellant failed to object and has waived any error. TEX.R.APP.P. 52(a). The second time the phrase was used, appellant objected, the court sustained and further instructed the jury to disregard the remark. Such an instruction is sufficient to cure unless the question, evidence or testimony is clearly calculated

to inflame the minds of the jury and is of such character as to suggest the impossibility of withdrawing the impressions produced. *Livingston v. State*, 739 S.W.2d 311, 335 (Tex.Crim.App.1987), *cert. denied*, 487 U.S. 1210, 108 S.Ct. 2858, 101 L.Ed.2d 895 (1988). We find nothing to indicate the remarks could not be cured by the instruction. The point of error is overruled.

Appellant next argues that he was deprived of effective assistance of counsel. A convicted defendant making this claim must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. *Hernandez v. State*, 726 S.W.2d 53, 55 (Tex.Crim.App.1986). The court must then determine whether, *in light of all the circumstances*, the identified acts or omissions were outside the wide range of professional competent assistance. *Id.*, (emphasis added).

 Appellant faults, in main part, his attorney because he did not object to certain questions and testimony. Even though we have dealt with two instances, discussed above, where counsel failed to properly object, thereby waiving error, effective assistance of counsel does not mean error-free counsel. *Hernandez, supra*, at 58. A review of the record shows that, by and large, appellant himself had either opened the door for the questions and testimony or the testimony was such that it was legally admissible. The record here also clearly establishes that appellant was his own worst enemy. He testified against advice of counsel. He insisted that a certain other witness testify, against advice of counsel. In all the record does not show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

 Appellant further argues he was denied due process of law because he received the maximum sentence, even though he had never before been convicted of a felony. It is the general rule that as long as a sentence is within the proper range of punishment set by statute or the legisla-

ture, it will not be disturbed on appeal. *Jackson v. State*, 680 S.W.2d 809, 814 (Tex.Crim.App.1984); *Nunez v. State*, 565 S.W.2d 536, 538 (Tex.Crim.App.1978); *see also Fielding v. State*, 719 S.W.2d 361, 363 (Tex.App.—Dallas 1986, pet. ref'd). The point of error is overruled.

The judgment is affirmed.

CADENA, Chief Justice, dissenting.

I cannot join in the affirmance of the judgment in this case.

I can see no justification for dragging in the fact that appellant was the "Grand Dragon in the Ku Klux Klan of Texas." The majority opinion gratuitously describes this testimony as "impeachment testimony" but chooses to omit explaining what the testimony impeaches.

The evidence in question, consisting of conduct by appellant, cannot be characterized as evidence of conduct which attacks appellant's credibility. It cannot be seriously contended that holding the office of Grand Dragon of the Ku Klux Klan has any relevance to the question of credibility and is no indicia of untruthfulness or truthfulness. *See* TEX.R.CRIM.EVID. 608.

It is true that appellant made only the most general objection. But to state the specific ground of objection is required only "if the specific ground [is] not apparent from the context; ..." TEX.R.CRIM. EVID. 103. It takes no great mental effort to realize why appellant would object to evidence having as its sole purpose the revelation that, at some time in the 1970's, he held the office of Grand Dragon of the Ku Klux Klan. Such evidence has not the slightest tendency to show that appellant was engaged in the manufacture of a controlled substance. The reason prompting the presentation of such evidence is not difficult to discover. The only explanation is that the prosecutor believed it would increase the possibility of a conviction. It cannot be said that the probative value of the evidence outweighed its prejudicial effect, because its probative value was zero.

In the application of TEX.R.CRIM.EVID. 103(a)(1) the concurring opinion has substi-

tuted the word "objection" for the word "context" so that the rule would read that a specific objection is required only "if the specific ground was not apparent from the objection." Doing such violence to the meaning of "context" is unjustified.

It would be helpful to apply this theory which changes "context" to "objection" to a case in which law enforcement officials testified that defendant confessed only after his feet were burned and he was forced to witness the torture of his wife and child by officers. If, after such testimony, when the confession was offered in evidence, counsel for appellant merely said, "I object," would anyone seriously argue that "the specific ground was not apparent from the context"? I am unwilling to attribute such ignorance of the law to our learned trial judges.

In view of the severity of the punishment meted out to a first offender, it takes a determined effort to reach the conclusion that, beyond a reasonable doubt, the evidence did not contribute to the verdict, even if we blithely overlook the incongruous posture assumed by prosecutors who deliberately drag in inadmissible testimony and then insist on appeal that the evidence could not possibly affect the outcome of the trial.